AMERICAN FEDERATION OF
TEACHERS-OREGON, AFT, AFL-CIO,
an Oregon unincorporated association,
*Respondent,*

*and*

STATE OF OREGON,
*Intervenor - Respondent,*

*v.*

OREGON TAXPAYERS UNITED PAC,
an Oregon political committee;
Oregon Taxpayers United Education Foundation,
an Oregon nonprofit corporation,
*Appellants,*

*and*

John DOES 1 through 10,
*Defendants.*

OREGON EDUCATION ASSOCIATION,
an Oregon nonprofit corporation,
*Respondent,*

*and*

STATE OF OREGON,
*Intervenor - Respondent,*

*v.*

OREGON TAXPAYERS UNITED PAC,
an Oregon political committee;
Oregon Taxpayers United Education Foundation,
an Oregon nonprofit corporation,
*Appellants,*

*and*

John DOES 2 through 10,
*Defendants.*

0108-08942, 0012-12632; A122158 (Control), A122168
(Cases Consolidated)

149 P3d 159

Gregory A. Hartman, Michael J. Morris, Aruna A. Masih, and Bennett, Hartman, Morris & Kaplan LLP, and Gene Mechanic, Giles Gibson, and Goldberg, Mechanic, Stuart & Gibson, LLP for petition.

Gregory W. Byrne for response.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Edmonds, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Plaintiffs American Federation of Teachers (AFT) and Oregon Education Association (OEA) petition for reconsideration of our decision in *American Fed. Teachers v. Oregon Taxpayers United*, 208 Or App 350, 145 P3d 1111 (2006). For the reasons that follow, we allow reconsideration and adhere to our former opinion.

In *American Fed. Teachers*, we held, in pertinent part, that (1) the trial court erred in denying defendant Oregon Taxpayers United Political Action Committee's (OTU-PAC) motion to dismiss Count 3, as it related to OTU-PAC's falsification of certain reports (C&E reports), but (2) the court correctly denied Oregon Taxpayers United Education Foundation's (OTU-EF) motion to dismiss Count 3 as it related to the falsification of other reports (CT-12 reports). *Id.* at 360-65. On reconsideration, plaintiffs do not challenge our conclusion that OTU-PAC's submission of false C&E reports did not constitute a predicate offense for purposes of the Oregon Racketeer Influenced and Corrupt Organizations Act (ORICO), ORS 166.715 to 166.735. Rather, plaintiffs assert that, because they alleged that OTU-PAC acted in concert with OTU-EF and that OTU-PAC and OTU-EF should be held jointly and severally liable for damages caused to plaintiffs, OTU-PAC should, under a theory of "enterprise liability," be held vicariously liable for all of the damages the jury awarded for Count 3 based on OTU-EF's ORICO liability for falsification of its CT-12 reports. Thus, plaintiffs assert, this court erred both in reversing the money judgment under Count 3 as to OTU-PAC and in vacating certain provisions of the court's injunction that pertained to OTU-PAC.[1]

As explained below, we adhere to our decision because, even assuming without deciding that plaintiffs' theory of vicarious "enterprise liability" is a viable one, plaintiffs did not adequately plead, develop, or brief that theory of liability that they advance for the first time on reconsideration.

---

[1] Although plaintiffs' petition does not explicitly so state, it appears that they are proceeding based on ORAP 6.25(1)(b), which permits a party to seek reconsideration based on a contention that there was "error in the procedural disposition of the appeal requiring correction or clarification to make the disposition consistent with the holding or rationale of the decision or the posture of the case below."

The theory of liability that plaintiffs advance for the first time on reconsideration is that, under ORICO, all conspirators are liable for the acts of their coconspirators. Plaintiffs point to ORS 166.720(4), which provides that "[i]t is unlawful for any person to conspire or endeavor to violate any of" the substantive ORICO provisions found in ORS 166.720(1) through (3). Plaintiffs further note that "persons acting in concert may be liable jointly for one another's torts" under various theories of liability. *Granewich v. Harding*, 329 Or 47, 55, 985 P2d 788 (1999). Thus, plaintiffs reason, because they alleged that both OTU-PAC and OTU-EF acted in concert with each other, it does not matter that OTU-PAC was entitled to dismissal of Count 3 with regard to its own falsification of reports—it remained liable because it acted in concert with OTU-EF, which was liable under Count 3 for falsification of other reports.

We express no opinion as to whether plaintiffs' theory, in the abstract, is viable in connection with ORICO claims.[2] Rather, as explained below, we decline to address it because plaintiffs did not advance it at trial or on appeal until this point.

Plaintiffs' position on reconsideration is that they adequately pleaded and proved (and implicitly that the judgment in their favor embodied) that defendants were jointly

---

[2] We note, however, that the question is somewhat complicated by the manner in which plaintiffs pleaded this action. That is, they named OTU-PAC and OTU-EF as defendants, but also described OTU-PAC and OTU-EF as part of the "enterprise" and alleged that the ORICO violations were carried out by defendants' agents Bill Sizemore and Becky Miller, and that defendants were liable for their actions based on *respondeat superior*.

In *Kilminster v. Day Management Corp.*, 133 Or App 159, 169, 890 P2d 1004 (1995), *aff'd in part and rev'd in part on other grounds*, 323 Or 618, 919 P2d 474 (1996), we noted that ORICO "prohibits any 'person' from conducting the affairs of an 'enterprise' through a 'pattern of racketeering activity.'" We explained that the enterprise must be different from the person whose racketeering ORICO was designed to prohibit and that the persons, not the enterprise, were the proper defendants. *Id.* at 170. We adopted the rule from *Brittingham v. Mobil Corp.*, 943 F2d 297, 300 (3rd Cir 1991), that "a corporate 'enterprise' cannot be held vicariously liable for the [RICO] violations of its employees, either for aiding and abetting, or under a theory of respondeat superior." *Kilminster*, 133 Or App at 170-71. However, because defendants in this case never challenged plaintiffs' pleadings on that ground, that pleading irregularity did not affect the outcome of this appeal. Nonetheless, our holding in *Kilminster* does make it problematic to accept at face value plaintiffs' assertions about vicarious liability among ORICO defendants/ enterprises.

and severally liable for plaintiffs' damages because each defendant was vicariously liable for the racketeering crimes of the other. In particular, plaintiffs point to the following portions of their pleadings on Count 3:

> "4. At all times mentioned herein, there existed an enterprise as defined by ORS 166.715(2). The enterprise consisted of defendants OTU[-PAC] and OTU-EF acting in concert with * * * Bill Sizemore and Becky Miller and [various other named entities].
>
> "* * * * *
>
> "26. In connection with its application for the benefit of being able to operate as an Oregon PAC and thereby receive and spend money to solicit signatures to place Measures 92 and 98 on the ballot and to campaign for passage of Measures 92 and 98, defendant OTU-PAC and its subsidiary PACs were required by Oregon law, ORS 260, *et seq.*, to file periodic reports ('C&E reports') with the Oregon Secretary of State detailing contributions received and expenditures made in support of those initiative measures. From the years 1998 through 2000, William Sizemore and Becky Miller, acting as agents of OTU-PAC, signed and filed false C&E reports with the Oregon Secretary of State, knowing such reports to contain false written statements, including misstatements of the amount of funds received from OTU-EF and other contributors for use by OTU-PAC.
>
> "* * * * *
>
> "28. In connection with its application to maintain the benefit of tax-exempt status and thereby the ability to solicit tax-deductible contributions in Oregon, OTU-EF is required to submit annual written reports to the Charitable Activities Section of the Oregon Department of Justice ('DOJ') known as CT-12 forms. As an agent of OTU-EF, William Sizemore signed and submitted CT-12 forms to DOJ for the years 1998 through 2000, during the campaign to place Measures 92 and 98 on the ballot and have them enacted into law. * * * Sizemore knew that these CT 12 forms * * * contained false statements about the use of OTU-EF funds.
>
> "29. At the time that Sizemore and Miller signed and submitted the above-mentioned C&E reports to the Oregon Secretary of State and Sizemore signed and submitted the CT-12 forms to the DOJ * * * they knew that OTU-EF was

being used as a conduit to raise money and to secretly use it to pay OTU-EF employees to perform work for OTU-PAC, and to pay the above-described circulators to gather signatures to qualify Measures 92 and 98 on the 2000 general election ballot. The C&E and CT-12 forms were intentionally false, concealing the actual use of funds raised by OTU-EF to support OTU-PAC activity related to Measures 92 and 98, concealing the source of contributions to Measures 92 and 98, and enabling more funds to be raised to support Measures 92 and 98 through the tax exempt OTU-EF.

"* * * * *

"32. Defendants * * * benefitted from the racketeering activities of OTU-EF's agents.

"WHEREFORE, plaintiff[s] pray[ ] for judgment against defendants, jointly and severally[.]"

Plaintiffs further point out that the jury answered "yes" to the following questions on the verdict form:

"COUNT 3

"13. Was OTU-PAC associated with an enterprise through a pattern of racketeering with regard to the filing of CT-12 reports or with regard to the filing of C&E reports?

"14. Was OTU-EF associated with an enterprise through a pattern of racketeering with regard to the filing of CT-12 reports or with regard to the filing of C&E reports?"

Finally, plaintiffs note that the judgment specifically made the defendants jointly and severally liable for their damages.

Plaintiffs posit on reconsideration that,

"[i]n issuing its ruling reversing the money judgment under Count 3 as to OTU-PAC this court overlooked that the pleadings could be fairly read to create 'enterprise liability' because OTU-EF and OTU-PAC were each members of the ORICO enterprise, because OTU-PAC conspired to violate ORICO, and because OTU-PAC can then be held jointly and severally liable for OTU-EF's racketeering activities."

Defendants respond that, although plaintiffs pleaded that defendants were part of an enterprise, they did not plead in conjunction with Count 3 that OTU-PAC was liable under a conspiracy theory for OTU-EF's filing of false

CT-12 reports. They further note that, under ORICO, the terms "enterprise" and "conspiracy" are not used interchangeably, and assert that plaintiffs neither pleaded nor proved a conspiracy with regard to the filing of the CT-12 reports.[3]

The primary problem with plaintiffs' argument that we "overlooked" what they are now asserting is that plaintiffs appear to be confusing the common law of joint and several liability with the common law of vicarious liability. The two concepts are distinct; the terms are not interchangeable. In *Murray v. Helfrich*, 146 Or 602, 605-06, 30 P2d 1053 (1934), the court described joint and several liability as follows:

> " '[W]here the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concerted action.' 1 Cooley on Torts (4th Ed.), § 86, p. 277."

*See also Black's Law Dictionary* 933 (8th ed 2004) ("each liable party is individually responsible for the entire obligation").

Vicarious liability is different. In *Doe v. Oregon Conference of Seventh-Day Adventists*, 199 Or App 319, 328, 111 P3d 791 (2005), we noted:

> "The theory of vicarious liability imposes liability on one person for the acts of another. *See generally* Dan B. Dobbs, *The Law of Torts* § 333, 905 (2001). The term encompasses a variety of situations: co-conspirators, partners, and joint venturers can all be vicariously liable for each other's torts or crimes. When the 'person' upon which liability ultimately rests is a fictive person, that is, a corporation, the only kind of liability that can conceivably exist is vicarious[.]"

---

[3] Defendants further suggest that questions 13 and 14 of the verdict form are "acknowledged error[s] of law and fact" and that this court should take the opportunity to treat these "errors" as "apparent on the face of the record" and "reverse the verdict on Count 3 as to both defendants." We note that defendants did not raise such a contention on appeal and do not seek reconsideration. Beyond that, defendants' suggestion warrants no discussion.

*See also Black's Law Dictionary* at 934 (liability one party may bear "for the actionable conduct of a subordinate or associate * * * based on the relationship between the two parties").

Thus, a defendant that is vicariously liable for the actions of another person might be held jointly and severally liable (assuming that the other person was also a defendant in the case, which certainly is not necessary in order to establish vicarious liability). But the obverse is not true: One may not assume from the fact that liability of two defendants in a case is joint and several that each is responsible for the entire amount based on a theory of vicarious liability.

Here, plaintiffs' pleadings, although they alleged that the defendants acted in concert and as part of an enterprise, set forth allegations in Count 3 relating to OTU-PAC's alleged liability for filing false C&E reports (paragraph 26) and relating to OTU-EF's alleged liability for filing false CT-12 forms (paragraph 28). Although the pleadings adequately described how OTU-EF's filing of false CT-12 forms benefitted OTU-PAC, at no point did the pleadings suggest that OTU-PAC should be held vicariously liable for OTU-EF's filing of false CT-12 forms. *See generally Holger v. Irish*, 316 Or 402, 405-08, 851 P2d 1122 (1993) (pleading facts that would support direct liability by a defendant were insufficient to entitle plaintiff to jury instruction on vicarious liability). Thus, in this case, the pleadings adequately put defendants and the court on notice that plaintiffs were asserting that defendant organizations were vicariously liable for the actions of their agents *Sizemore and Miller. But see* 209 Or App at 522 n 2. But Count 3 did *not* adequately set forth the theory that defendants should be held vicariously liable for the damages caused by *each other* on the ground that they were a part of the same "enterprise." Had that theory of liability actually been endorsed by any previous cases decided under ORICO (and not, in fact, somewhat undermined by our holding in *Kilminster v. Day Management Corp.*, 133 Or App 159, 169, 890 P2d 1004 (1995), *aff'd in part and rev'd in part on other grounds*, 323 Or 618, 919 P2d 474 (1996), *see* 209 Or App at 522 n 2, above), plaintiffs might be on more solid ground. Here, however, the pleadings do not allege such a theory in any cognizable fashion nor did the

jury instructions address such a theory of liability. Thus, plaintiff's present vicarious liability theory was not "in play."

Finally, we address the significance of the jury's affirmative answer to question 13 on the verdict form: "Was OTU-PAC associated with an enterprise through a pattern of racketeering with regard to the filing of CT-12 reports or with regard to the filing of C&E reports?" That response, standing alone, simply is not a solid enough basis on which plaintiffs can build an entirely new theory of liability for the first time on reconsideration. If the issue of OTU-PAC's vicarious liability for OTU-EF's falsification of CT-12 reports had ever been presented to the jury, the general rule announced in *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003), might require us to uphold the verdict against OTU-PAC on Count 3 based on the jury's answer to question 13. However, *Shoup* does not endorse the proposition that the imprecise phrasing of a question on a special verdict form permits a plaintiff to argue a new theory of liability for the first time on appeal, much less on reconsideration of an appeal.

We reject without discussion plaintiffs' request for leave to amend their pleadings to expressly allege their new theory of liability.

Reconsideration allowed; former opinion adhered to.